## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH A. WEINSTOCK,<br><br>            Plaintiff,<br>   vs.<br><br>U.S. GEOTHERMAL INC., JOHN H. WALKER, PAUL LARKIN, LELAND MINK, JAMES C. PAPPAS, RANDOLPH J. HILL, ALI HEDAYAT, and DOUGLAS J. GLASPEY,<br><br>            Defendants. | Civil Case No.:<br><br>**<u>COMPLAINT</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Joseph A. Weinstock ("Plaintiff"), brings this suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act Of 1934. In support of this Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## <u>NATURE OF THE ACTION</u>

1.  Plaintiff brings this action against U.S. Geothermal Inc. ("U.S. Geothermal" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of U.S. Geothermal. Specifically, Defendants solicit stockholder approval in connection with the sale of the Company through a proxy statement that omits material facts necessary to make the statements therein not

false or misleading. Stockholders need this material information to decide whether to vote in favor of the merger.

2.    On January 24, 2018, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), dated January 23, 2018, by which Ormat Technologies Inc., through its subsidiary Ormat Nevada Inc. ("Parent"), and Parent's wholly owned subsidiary, OGP Holding Corp. ("Merger Sub" and together with Parent and Ormat Technologies Inc., "Ormat") will acquire all of the outstanding shares of U.S. Geothermal for $5.45 in cash for each share of U.S. Geothermal stock ("Merger Consideration"), in a transaction valued at approximately $110 million at the time of the announcement (the "Proposed Transaction").

3.    In connection with the Proposed Transaction, on March 2, 2018, the Company filed a materially incomplete and misleading preliminary proxy statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC").  The Proxy Statement is materially deficient and misleading because, inter alia, it fails to disclose material information relating to: (i) the background of the Proposed Transaction; (ii) potential conflicts of interest involving the Company's financial advisor; and (ii) potential conflicts of interest involving the Company's executives and directors. Without all material information U.S. Geothermal stockholders cannot make an informed decision regarding whether to vote for or against the Proposed Transaction. Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision in connection with the shareholder vote on the Proposed Transaction.

4.    For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Plaintiff seeks to enjoin the Proposed Transaction or, in the

event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 20(a) and 14(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Company is incorporated in Delaware.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of U.S. Geothermal common stock.

9. Defendant John H. Walker ("Walker") has served as U.S. Geothermal's Chairman of the Board since December, 2003.

10. Defendant Douglas J. Glaspey ("Glaspey") is the Co-founder, President and Chief Operating Officer and a director of U.S. Geothermal. Glaspey has served as a director of the Company since 2000.

11.     Defendant Ali Hedayat ("Hedayat") has served as a director of the Company since 2017.

12.     Defendant Randolph J. Hill ("Hill") has been a director of the Company since September, 2016.

13.     Defendant James C. Pappas ("Pappas") has served as a director of the Company since September, 2016.

14.     Defendant Dr. Leland "Roy" Mink ("Mink") has served as a director of the Company since 2006.

15.     Defendant Paul Larkin ("Larkin") has served as a director of the Company since 2000.

16.     Defendants Larkin, Mink, Pappas, Hill, Hedayat, Glaspey, and Walker are collectively referred to herein as the "Board" or the "Individual Defendants."

17.     Defendant U.S. Geothermal is a renewable energy company focused on the development, production and sale of electricity from geothermal energy. The company is a Delaware corporation and maintains its principal offices at 390 E Parkcenter Blvd, Suite 250, Boise, Idaho 83706. U.S. Geothermal's common stock is traded on the New York Stock Exchange under the symbol "HTM."

18.     U.S. Geothermal and the Individual Defendants are collectively referred to herein as "Defendants."

## OTHER RELEVANT ENTITIES

19.     OGP Holding Corp is a Delaware corporation and indirect wholly owned subsidiary of Ormat, and was incorporated for the purpose of consummating the Proposed Transaction.

4

20. Ormat Nevada Inc., a Delaware corporation incorporated on November 12, 1991, is a wholly owned subsidiary of Ormat Technologies, Inc. that operates and maintains geothermal power plants and recovered energy-based power plants in the United States.

21. Ormat Technologies, Inc., is a leading vertically integrated company that is currently primarily engaged in the geothermal and recovered energy power business. Ormat Technologies, Inc. designs, develops, builds, sells, owns, and operates clean, environmentally friendly geothermal and recovered energy based power plants, usually using equipment that is designed and manufactured in-house. Ormat maintains its principal executive offices at 6225 Neil Road, Reno, Nevada 89511. Ormat's ordinary shares are listed on the New York Stock Exchange under the symbol "ORA".

## FACTUAL BACKGROUND

### The Merger Process

22. Ormat's interest in a potential merger with U.S. Geothermal stretches back to early July 2015, when Ormat first approached U.S. Geothermal with an unsolicited expression of interest in the company. Following this initial approach, the two entities entered into a nondisclosure agreement for the purpose of exploring a potential transaction. The nondisclosure agreement entered into between U.S. Geothermal and Ormat contained a standstill provision prohibiting Ormat from attempting to acquire or take control of U.S. Geothermal without consent of the Board until April 15, 2016.

23. In March of 2016, following a lengthy review process, the Board determined that a strategic transaction with Ormat was not in the best interest of U.S. Geothermal, and that the best path to maximizing long term stockholder value was to continue to execute the Company's strategic growth plan. However, this decision was to be short-lived, as three months later, in July

2016, U.S. Geothermal was approached by a foreign strategic party, Party A, regarding a potential investment in U.S. Geothermal. U.S. Geothermal entered into a nondisclosure agreement with Party A in the fall of 2016, and on or about November 22, 2016, U.S. Geothermal received from Party A proposal letter which included a nonbinding indication of interest to purchase the outstanding shares of the company's common stock within a range of $5.30 to $5.93 per share.

24.     In late November and early December 2016, Dennis Gilles ("Gilles"), U.S. Geothermal's former CEO, contacted four public and private geothermal companies, as well as one private equity fund. These five parties had each previously expressed a similar unsolicited interest in a potential transaction but, unlike Party A, had not provided any indication of price.

25.     In light of the interest from Party A and others, on December 1, 2016, the Board elected to establish a special committee to facilitate and review any potential transactions (the "Special Committee"). The Special Committee was formed of three independent directors consisting of Defendant Larkin, Defendant Pappas and Defendant Hill.[1]

26.     On December 5, 2016, the Special Committee met and reviewed Party A's proposal. After concluding that the range suggested by Party A was low, the Special Committee resolved to seek a higher offer from Party A. During the same meeting, the Special Committee members also discussed a roster of potential financial advisors and determined that there were two preferred choices. Prior to the next meeting of the special committee and at the request of the special committee, Defendant Pappas interviewed both as potential financial advisors.

27.     On December 13, 2016, Defendant Larkin joined with Defendant Glaspey and U.S. Geothermal's former CEO, Gilles, in meeting with representatives of Party A to discuss the

---

[1] Defendant Hedayat, another independent director, joined the special committee following his appointment to the Board in February of 2017.

process the Board had undertaken. During this meeting, Defendant Larkin communicated to Party A that an offer in the range of $6.00 to $6.50 would be more compelling to the Special Committee.

28.     Two days later, on December 15, 2016, the Special Committee decided to engage ROTH Capital Partners ("ROTH"). ROTH was officially engaged as the financial advisor to the Special Committee on January 9, 2017.

29.     On January 13, 2017, the company received a written, non-binding proposal from Party B, a foreign strategic party, for the purchase of certain of the company's subsidiaries.

30.     That same day, the Company also received a written, non-binding proposal from Party C, a foreign fund, by which Party C would purchase the company's shares at a non-binding price of $6.50 per share.

31.     On January 17, 2017, Defendant Pappas spoke with a representative of Party B to request that Party B modify its proposal to become a cash purchase for all of the company shares. Party B later withdrew from the process after notifying Defendant Pappas that it was unwilling to alter its earlier proposal.

32.     On January 18, 2017, members of the Special Committee spoke separately with representatives of Party A and Party C, and indicated that the Special Committee considered the current respective bids to be inadequate.

33.     During the week of January 30th, Party C executed a nondisclosure agreement and representatives of Party C proceeded to meet with members of Company management to conduct due diligence.

34.     On March 2, 2017, another interested entity, Party D, which had previously held preliminary discussions with Defendant Pappas, met with representatives of ROTH to discuss its

potential bid.

35.     On March 15, 2017, Party D submitted a proposal for a share exchange transaction using an equity valuation of the company of $120 million (approximately $5.66 per share). This proposal from Party D was later supplemented by a joint proposal with Party E.

36.     While these proposals were being presented to U.S. Geothermal, and considered by the Special Committee, Ormat elected to renew its own interest in an acquisition of U.S. Geothermal. On March 16, 2017, Ormat communicated to Defendant Larkin that it was still interested in a potential transaction with U.S. Geothermal, but that Ormat would need to conduct additional due diligence before formalizing any offer and that Ormat would require an exclusivity agreement. Additionally, Ormat communicated to Defendant Larkin that their current indicative range for the whole company valued U.S. Geothermal at approximately $90 to $95 million, or approximately $4.25 to $4.48 per share.

37.     Throughout April and May 2017, the Special Committee continued to hold discussions with various parties that expressed an interest in a potential transaction.

38.     On June 9, 2017, a representative of Party G contacted Defendant Larkin regarding its potential interest.

39.     On June 14, 2017, the special committee received a joint proposal from Party D/E for an acquisition of assets for cash consideration of $90 million plus the assumption of outstanding debt. The following day, Party D/E submitted a revised offer which increased the cash consideration to $120 million.

40.     On June 16, 2017, Ormat submitted a proposal to purchase the company's shares at a range of $5.11 to $5.80 per share.

41.     On June 20, 2017, Party D/E submitted a revised proposal to acquire the shares of

U.S. Geothermal at a proposed price of $6.00 per share. Two days later, following discussions between members of the Special Committee and representatives of Party D/E, Party D/E submitted a revised proposal with a proposed price of $6.25 per share.

42.     Following the receipt of Party D/E's revised offer, the Special Committee held discussions with each of Ormat and Party G in the hope of receiving an improved offer from both entities. These efforts bore fruit almost immediately, as on June 25, 2017, Ormat communicated that it was willing to submit a revised proposal at $5.80 per share price. One week later, on July 3, 2017, the special committee received a revised proposal from Party G with a base price of $6.75 per share and the potential for an additional $0.25 under certain circumstances. In light of Party G's superior offer, the Special Committee proceeded to negotiate the terms of the exclusivity agreement with Party G.

43.     On July 6, 2017, following the recommendation of the Special Committee and the approval by the Board, the Company entered into an exclusivity agreement with Party G. Although the Company negotiated exclusively with Party G throughout the month of July, Party G's willingness to complete the deal quickly soured. On August 3, 2017, Party G informed the Company of its withdrawal from the process, and the Special Committee determined to re-engage with Party D/E.

44.     On August 7, 2017, the special committee recommended, and the Board approved, an exclusivity agreement between U.S. Geothermal and Party D/E. Negotiations between Party D/E and U.S. Geothermal proceeded throughout the month of August and September until, on September 21, 2017, the Special Committee was informed that Party D and Party E had ended their partnership relating to the joint proposal.

45.     Despite the loss of its partner, on September 22, 2017, Party D submitted an

updated proposal, without Party E, which contemplated a proposed price per share of $5.40, which could be increased by an additional $0.85 per share assuming specified speculative milestones were met prior to closing.

46.    Unwilling to proceed with only Party D, the Special Committee resumed discussions with Ormat and proceeded to negotiate the terms of a nondisclosure agreement and exclusivity agreement between U.S. Geothermal and Ormat.

47.    On October 3, 2017, the special committee received: (i) a written proposal from Ormat to acquire the company at an indicative price of $5.75 per share of common stock; and (ii) written confirmation from Party D of its September 22 proposal ($5.40 which could be increased by an additional $0.85 per share assuming specified speculative milestones were met prior to closing) without any price increase.

48.    On October 20, 2017, Party D submitted a revised proposal which contained an indicative bid of $5.60 per share with potential to increase the per share price to $6.25 based on the occurrence of specified speculative events prior to close.

49.    One week later, on October 27, 2017, the Company received an unsolicited inquiry from counsel to a private equity fund. No action was taken in response to this new interest.

50.    On October 30, 2017, Ormat submitted its revised non-binding proposal to acquire U.S. Geothermal at a price per share of $5.75, and Ormat and U.S. Geothermal quickly thereafter entered into a nondisclosure agreement and an exclusivity agreement.

51.    Following the execution of the nondisclosure and exclusivity agreement, Ormat and its accounting, legal, and tax advisors were given access to an electronic document data site and proceeded to commence due diligence efforts.

52.     Throughout the month of December, the parties proceeded to negotiate issues relating to pricing. Specifically, on December 13, 2017, Ormat notified the Special Committee that potential pricing adjustments for working capital items and operational issues resulted in the Company lowering the proposed consideration to a revised range of $4.82 to $5.20. Following further discussion, the Special Committee instead proposed a $5.45 per share plus a special dividend of $0.10 per share under specified circumstances. Over the weekend of December 15-16, 2017, Defendant Pappas had several conversations with Ormat executives during which time Ormat discussed a proposal to acquire the company at a reduced indicative price of $5.45 per share.

53.     Ormat's proposal was reviewed and discussed by the Board during a December 18, 2017 Board meeting at which time the Board instructed the special committee to seek a price per share in the range of $5.50 - $5.55.

54.     The Board's request for an increase in the merger consideration was rebuffed by Ormat the following day, as the Ormat Board promptly communicated to the Special Committee that it was unwilling to increase its indicative bid above $5.45 per share.

55.     In light of Ormat's entrenched position, on January 5, 2018, the Special Committee communicated with Party D and received assurances that Party D's prior offer of $5.60 per share, with the potential to increase the per share price to $6.25, was still valid. Despite the potential for a significantly higher offer, the Special Committee recommended to the Board that the company continue to work with Ormat, and that any attempt to seek an increased price from Ormat at this stage would be rejected and could put the transaction at risk.

56.     Between December 22, 2017 and January 23, 2018, the parties and their respective representatives proceeded to negotiate the terms of the merger agreement, and on the

evening of January 23, 2018, the Special Committee and the Board met with management to consider approval of the merger and the merger agreement. After ROTH rendered its oral opinion that the consideration to be received by the holders of shares of U.S. Geothermal's common stock pursuant to the merger agreement was fair from a financial point of view to such holders, the Special Committee unanimously recommended to the Board that it approve the merger agreement, and the Board accepted the Special Committee's recommendation and unanimously voted to approve and adopt the merger agreement.

57.     On the morning of January 24, 2018, Ormat approved and executed the merger agreement, the parties exchanged signature pages, and the parties issued a press release announcing the transaction.

58.     One month later, and approximately one week before the filing of the materially deficient and misleading Proxy Statement,  ROTH became aware that its present value of cash flow analysis inadvertently omitted certain components of the Company's cash flow projections. ROTH's recalculated present value of cash flow analysis resulted in a lower range of equity values for the Company of $3.56 to $4.25 per share as opposed to a range of $4.28 to $5.01 per share in the prior analysis.

59.     Despite this substantial mistake, on February 28, 2018, ROTH attended a meeting with the Special Committee and the Board, during which time the financial advisor confirmed ROTH's recalculated present value of cash flow analysis did not change ROTH's opinion that the merger consideration of $5.45 in cash per share to be received by the holders of Company Shares was fair, from a financial point of view, to such holders.

60.     Following ROTH's confirmation, the Special Committee and Board members present at the February 28, 2018 meeting unanimously confirmed their view that the merger

agreement was in the best interests of the Company and its stockholders.

**The Merger Announcement**

61.     In a press release dated January 24, 2018, U.S. Geothermal announced that it had entered into the Merger Agreement with Ormat pursuant to which a subsidiary of Ormat will acquire all outstanding shares of U.S. Geothermal in a transaction valued at approximately $110 million.

62.     The press release states in pertinent part:

BOISE, Idaho, Jan. 24, 2018 (GLOBE NEWSWIRE) -- U.S. Geothermal Inc. (the "Company") (NYSE American: HTM) announced today that it has entered into a definitive merger agreement under which a wholly owned subsidiary of Ormat Technologies, Inc. ("Ormat") (NYSE:ORA) will acquire the Company for $5.45 per share in an all cash transaction.

The agreement, which has been unanimously approved by both companies' Boards of Directors, represents a premium of approximately 28.5% to the prior day closing stock price on January 23rd, 2018.

**Statement by Doug Glaspey, a Founder and Chief Executive Officer of US Geothermal**

"We are proud that Ormat, the industry leader in geothermal development, recognized our company's value and have confidence in their ability to successfully develop the US Geothermal asset base," said Doug Glaspey, CEO of US Geothermal. "This transaction provides compelling value to our shareholders and is a testament to the hard work and efforts of our talented team members."

**Statement by Ormat**

"US Geothermal has developed a high-quality portfolio of geothermal assets," said Isaac Angel, CEO of Ormat Technologies. "As part of Ormat, we will leverage our core capabilities to help improve generation and enhance efficiency of these assets while also working to advance expansion opportunities. With this transaction, we demonstrate again the implementation of our business strategy to grow our business with accretive M&A transactions."

**Transaction Details**

The transaction is not subject to a financing condition and is expected to close during the second quarter of 2018, subject to the approval of US Geothermal

shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

Certain funds advised by JCP Investment Management, LLC, which own approximately 15.0% of the outstanding shares of US Geothermal, as well as the directors and officers of US Geothermal have entered into an agreement to vote in favor of the transaction.

ROTH Capital Partners, LLC acted as financial advisor and Dorsey & Whitney, LLP acted as legal counsel to US Geothermal.

**About U.S. Geothermal Inc.:**

U.S. Geothermal Inc. is a leading and profitable renewable energy company focused on the development, production and sale of electricity from geothermal energy. The Company is currently operating geothermal power projects at Neal Hot Springs, Oregon, San Emidio, Nevada and Raft River, Idaho for a total designed net output of approximately 45 MWs. The Company is also developing projects at: the Geysers, California; a second phase project at San Emidio, Nevada; at Crescent Valley, Nevada; and the El Ceibillo project located near Guatemala City, Guatemala.

**The Proxy Statement Omits Material Information**

63.     On March 2, 2017, U.S. Geothermal filed a Preliminary Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations and omissions of fact that must be cured to allow U.S. Geothermal stockholders to render an informed decision with respect to the Proposed Transaction.

64.     As discussed below, the Proxy Statements omits material information regarding: (i) the background of the transaction; (ii) potential conflicts of interest involving the Company's financial advisor; and (iii) potential conflicts of interest involving the Company's management and directors. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to U.S. Geothermal stockholders. Accordingly, U.S. Geothermal stockholders are being asked to vote for the

14

Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Sale Process:*

65.     With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Proxy Statement indicates that the Company received a number of indications of interest from various interested parties regarding a potential strategic transaction. However, details regarding whether the Company entered into nondisclosure agreements with these interested parties is noticeably absent from the Proxy Statement.

66.     As disclosed in the Proxy Statement, U.S. Geothermal entered into nondisclosure agreements with Party C, Party A, and Ormat for the purpose of exploring a potential transaction. However, details regarding the terms of these of the nondisclosure agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to U.S. Geothermal, are worryingly absent from the Proxy Statement. Furthermore, the Proxy Statement is silent as to whether any of the other prospective acquirors also entered into nondisclosure agreements with U.S. Geothermal.

67.     In light of the fact that the Special Committee entered into exclusivity agreements with both Party G and Party D, it stands to reason that these same parties also entered into nondisclosure agreements with U.S. Geothermal for the purpose of exploring a potential transaction. Accordingly, the Proxy Statement must disclose not only whether the Company entered into nondisclosure agreements with any of the other potentially interested parties, but also the details regarding the terms of these of the nondisclosure agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties

from making an unsolicited superior proposal to U.S. Geothermal.

68.    This information is material to U.S. Geothermal stockholders in evaluating the proposed transaction. As recently as January 5, 2018, Party D expressed a willingness to submit an offer to acquire the Company for $5.60 per share, with the potential to increase the per share price to $6.25.  Without further information, the Company's stockholders are being misled into assuming that other interested parties, including Party D, which were actively interested in acquiring the Company at a higher valuation, could make an offer to acquire the Company if they so choose – when it is likely that some may be precluded from doing so.

69.    Additionally, in connection with the Proposed Transaction, the Proxy Statement indicates that the Board formed a Special Committee composed of Defendant Larkin, Defendant Pappas, Defendant Hill, and Defendant Hedayat, and delegated to the Special Committee the authority to evaluate potential offers for a possible sale of U.S. Geothermal. However, the Proxy Statement fails to disclose whether the Special Committee formed by the Board has a charter and, if so, the specific duties of the Special Committee as set forth in the charter.

70.    The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following section of the Proxy Statement: (i) "Background of the Merger;" and (ii) "The Recommendation of U.S. Geothermal's Board and U.S. Geothermal's Reasons for the Merger."

### *Material Omissions Concerning Insiders' Potential Conflicts of Interest*

71.    With regard to potential conflicts of interest, the Proxy Statement fails to disclose material information pertaining to the voting agreements entered into by U.S. Geothermal's directors and executive officers. As noted on Page 51 of the Proxy Statement, each of U.S. Geothermal's   directors   and   executive   officers,   who   collectively   beneficially   owned

approximately 16.9% of U.S. Geothermal's outstanding shares as of December 31, 2017 (excluding any shares underlying outstanding options), have entered into an agreement to vote the shares beneficially owned by them as of the record date in favor of the merger agreement and the transactions contemplated thereby, subject to the terms and conditions of such voting agreement.

72.    Despite disclosing the existence of these voting agreements, the Proxy Statement omits to disclose the timing or nature of any discussions or negotiations that occurred between U.S. Geothermal's directors and executive officers and Ormat, nor does it disclose whether any of Ormat's prior proposals or indications of interest referenced these voting agreements. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. The omission of this information renders the following section of the Proxy Statement: (i) "Background of the Merger;" and (ii) "The Recommendation of U.S. Geothermal's Board and U.S. Geothermal's Reasons for the Merger."

### *Material Omissions Concerning ROTH's Conflicts of Interest*

73.    With regard to the potential conflicts of interest faced by ROTH, the Proxy Statement fails to fully disclose material information concerning ROTH's prior relationship with Ormat, or Ormat's various affiliates.

74.    In discussing potential conflicts of interest between ROTH and U.S. Geothermal, the Proxy Statement provides on Page 45 that "[i]n the past two years, no material relationship existed between the Company and/or its affiliates and ROTH and/or its affiliates pursuant to which compensation was received by ROTH or its affiliates as a result of such relationship."

However, no similar assurance is provided with regard to Ormat. Instead, the only reference to ROTH's prior relationship with Ormat can be found on Page 28 of the Proxy Statement, wherein the Proxy Statement notes that on January 23, 2018, the same day the Board unanimously voted to approve and adopt the merger agreement, "ROTH confirmed that it had no conflict of interest with respect to Ormat." This minimal disclosure is clearly insufficient. The Proxy Statement fails to disclose which "Ormat" this disclosure references. That same day, the Special Committee was informed for the first time that the Ormat "parent" under the merger agreement would be Ormat Nevada, and not Ormat Technologies. Furthermore, by simply noting that ROTH has no conflict of interest with respect to Ormat, the Proxy Statements fails to fully disclose the compensation and engagement over the past two years with respect to Ormat and any related entities.

75.     As a result of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, full disclosure of investment banker compensation and all potential conflicts is necessary for stockholders to have a materially complete sense of the conflicts of interests operating in the background.   Despite this requirement, the Proxy Statement contains misleading and contradictory statements regarding ROTH's prior relationship with Ormat, which make it extremely difficult for U.S. Geothermal stockholders to properly evaluate the Proposed Transaction.

76.     The omission of this information renders certain portions of the Proxy Statement materially misleading, including, inter alia, the following sections of the Proxy Statement: (i) "Background of the Merger;" (ii) "Opinion of U.S. Geothermal's Financial Advisor;" and (iii) The Recommendation of U.S. Geothermal's Board and U.S. Geothermal's Reasons for the Merger.

77.     Based on the foregoing, the Proxy Statement violates Section 14(a) of the

18

Exchange Act and applicable SEC regulations by materially misleading U.S. Geothermal stockholders. U.S. Geothermal public shareholders lack critical information necessary to evaluate the Proposed Transaction. Moreover, without the key financial information and related disclosures, U.S. Geothermal public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by ROTH, and whether they can reasonably rely on the financial advisor's fairness opinions.

78.     Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

79.     Plaintiff repeats and realleges each allegation set forth herein.

80.     As detailed herein, Defendants disseminated the materially incomplete and misleading Proxy Statement specified above, which contained statements and omissions which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary to make the statements therein not misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

81.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of U.S. Geothermal.

82. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information about the sale process for the Company, the consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially incomplete and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

83. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

84. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

85. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

86. The Individual Defendants acted as controlling persons of U.S. Geothermal within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of U.S. Geothermal and their participation in and awareness of the

Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

87.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

88.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

89.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

90.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a) declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 8, 2018                **O'KELLY ERNST & JOYCE, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
Daniel P. Murray (#5785)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Telephone: (302) 778-4000
Facsimile: (302) 295-2873
Email: rernst@oelegal.com
          dmurray@oelegal.com

**LEVI & KORSINSKY LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
          etripodi@zlk.com

*Attorneys for Plaintiff*